STATE of Indiana, Appellant–Plaintiff,

v.

Darrell GUNN, Appellee–Defendant.

No. 71A04–9912–CR–543.

Court of Appeals of Indiana.

Jan. 10, 2001.

Karen M. Freeman–Wilson, Attorney General of Indiana, Randi E. Froug, Depu-

ty Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

Michael J. Anderson, Anderson, Agostino & Keller, P.C., Mark Kopinski, South Bend, Indiana, Attorneys for Appellee.

## OPINION ON REHEARING

DARDEN, Judge

The State's Petition for Rehearing is hereby granted in order for this court to clarify why it ruled to affirm the trial court's granting of Gunn's motion to suppress. We write to explain briefly our conclusion that the State's petition for rehearing should be denied.[1] In our decision rendered on September 21, 2000, we affirmed the trial court's ruling that suppressed evidence of two breathalyzer tests that were performed 1) solely because of an employment contract provision, 2) on a breathalyzer machine that had not been certified by the Indiana University School of Medicine Department of Toxicology, and 3) by a technician who does not hold a certification from the Department of Toxicology. *See State v. Gunn*, 735 N.E.2d 304 (Ind.Ct.App.2000).

The State petitioned for rehearing based upon our supreme court's decision in *Oman v. State*, 737 N.E.2d 1131 (Ind. 2000). In *Oman*, the court determined that the trial court correctly refused to suppress a firefighter's post-accident toxicological test results. *Id.* at 1134. In *Oman*, the drug testing of a firefighter, who was involved in an accident, was performed pursuant to a city ordinance. The results of the test were obtained through a subpoena duces tecum issued to the testing laboratory by the prosecutor acting on a tip that the firefighter tested positive for drug use.[2]

The court held, *inter alia*, that: "the results of Oman's administrative drug test can be used in a criminal prosecution against him, but only if obtained by valid legal process externally initiated from the employment setting." *Id.* at 1146–47. The court then thoroughly examined the circumstances that formed the basis for issuing the subpoena. The court was satisfied that the subpoena was reasonable under the Fourth Amendment because the employer's testing program did not form the sole basis for the criminal investigation. An investigation based solely upon an employer's test results "would serve 'the ordinary needs of law enforcement' in a manner disapproved of in *Skinner*[3] and *Von Raab*[4]." *Id.* at 1147.

*Oman* is not inconsistent with our decision in this case. In this case, there is no evidence from which to conclude that the toxicological results of Gunn's administrative alcohol breath tests were "obtained by valid legal process externally initiated from the employment setting." *See Oman v. State*, 737 N.E.2d at 1146–47. The record does not reveal the existence of a subpoena or valid legal process to obtain the toxicological results.[5]

The testimony at the suppression hearing, favorably recited by the trial court after the hearing during the oral ruling granting the motion to suppress, indicates that no probable cause existed for a criminal investigation of Gunn at the time the

---

1. Oral argument on the petition for rehearing was held on November 30, 2000.

2. The court announced a new rule of criminal procedure applicable to investigative subpoenas: "A prosecutor acting without a grand jury must first seek leave of court before issuing a subpoena duces tecum to a third party for the production of documentary evidence." *Oman v. State*, 737 N.E.2d at 1138.

3. *Skinner v. Railway Labor Executives Association*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

4. *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).

5. Also, as we noted, the administrative testing was not performed with certified equipment or by a certified operator.

tests were administered.[6] The testimony revealed that, before the test results were obtained, no one investigating the accident believed that Gunn was intoxicated. The record reveals that a South Bend Police Department Division Chief, Brent Hemmerlein, gave the results to an investigator after the tests were performed; however, there is no indication in the record as to how Hemmerlein obtained the uncertified results.[7]

The judgment by the trial court·is affirmed.

SULLIVAN and MATTINGLY, JJ., concur.

---

6. The trial court's nunc pro tunc entry on the suppression motion merely recites that the tests are excluded from evidence.

7. The record reveals an Order Prohibiting Issuance of Ex Parte Investigative Subpoenas; however, because of the timing, it is apparent that the subpoenas were not related to obtaining the results of the administrative toxicological tests.